## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MICHAEL D. HURD, JR.
4711 7th Street, N.E.
Washington, D.C.  20017

      Plaintiff,

        v.

DISTRICT OF COLUMBIA GOVERNMENT           Case No: _____
441 4th Street, N.W.
Washington, D.C.  20001

Serve:  Office of the Attorney General
        Karl A. Racine, Attorney General of the
        District of Columbia
        441 4th Street, N.W.
        Washington, D.C.  20001

      Defendant.

## COMPLAINT

Complaining of the Defendant, the Plaintiff alleges and says:

1.  This is an action brought under 42 U.S.C. § 1983 for wrongful imprisonment and violation of civil rights.

## PARTIES

2.  Plaintiff Michael D. Hurd, Jr. ("Mr. Hurd" or "Plaintiff") is a natural person residing in the District of the Columbia.

3.  Defendant District of Columbia ("the District" or "Defendant"), is a political subdivision of the United States of America, and is a "person" within the meaning of 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C.§ 1331.

5. This Court has personal jurisdiction over the Defendant.

6. Venue is proper in this District.

## BACKGROUND FACTS

7. A lifelong resident of the Washington, D.C., area, Mr. Hurd served on active duty in the United States Marine Corps from 1997 until 2001, completing his active duty at Camp Lejeune, North Carolina.

8. Following his Honorable Discharge from the Marine Corps in 2001, he remained a member of the Marine Corps Reserves until February 9, 2005.

9. On August 3, 2005, Mr. Hurd was arrested in the District of Columbia and charged with carrying a pistol without a license.

10. On October 28, 2005, the United States Attorney issued a Criminal Information, charging Mr. Hurd with one count of carrying a pistol without a license along with one count of possession of a prohibited weapon, two counts of possession of unregistered firearms and one count of possession of a quantity of cocaine.

11. On January 13, 2006, Mr. Hurd pled guilty to all five counts listed in the Information.  The sentence was as follows:

Count B:      15 months in prison with credit for time serve, E.S.S.

[execution of sentence suspended] as to all but 30 days to run consecutive

to any other sentence; 3 years supervised release E.S.S.

2

Count C        1 year in prison with credit for time served E.S.S. to run

consecutive to any other sentence.

Count D:        180 days in jail with credit for time served E.S.S. to run

consecutive to any other sentence.

Count E.        180 days in jail with credit for time served E.S.S. to run

consecutive to any other sentence.

Count F:        180 days in jail with credit for time served E.S.S. as to all but

15 days to run consecutive to any other sentence.

With the execution of the sentence suspended as to all but 45 days of imprisonment, Mr.

Hurd was committed to the custody of the Attorney General to be imprisoned for a

period of 45 days, with credit, was required to pay a $1000 fine and was placed on one

year of supervised probation.

12.  On September 21, 2006, Mr. Hurd's probation was revoked, and the Superior

Court imposed the balance of the sentence, requiring Mr. Hurd to be imprisoned for a

period of 42 months and, upon release from imprisonment, to be on supervised release

for a period of three years.

13.  If the 42-month sentence had been served in full (and without any credit for

good behavior, rehabilitation programs, work details, special projects, etc.), Mr. Hurd

would have been released on March 21, 2010.

14.  The 42 month sentence began on September 21, 2006, and Mr. Hurd served

his time at the Federal Correctional Institution (FCI) in Beckley, West Virginia.

3

15.  On June 11, 2007, the FCI released Mr. Hurd to the District of Columbia Hope Village Halfway House.

16.  At the time of Mr. Hurd's release by the FCI, there were no outstanding warrants or detainers against Mr. Hurd.

17.  The Halfway House released Mr. Hurd on July 11, 2007, and Mr. Hurd began his three year term of supervised release.

18.  At the time of Mr. Hurd's release from the Halfway House, there were no outstanding warrants or detainers against Mr. Hurd.

19.  Mr. Hurd thereafter served his three year term of supervised release.  During this time, he had regular contact with the Court Services & Offender Supervision Agency officers monitoring his supervised release, and was never found to have violated the terms of his supervised release.

20.  During the time period of his supervised release, the term of imprisonment continued to run.  *See* D.C. Code § 24-406 ("a parolee shall receive credit toward completion of the sentence for all time spent on parole").

21.  On July 18, 2010, after having successfully completed the three year term of supervised release, Mr. Hurd's supervision was terminated.

22.  As of July 18, 2010, Mr. Hurd's 2006 sentence had been served in full, and the $1000 fine had long been paid.

23.  On May 29, 2011, Mr. Hurd was arrested on a misdemeanor charge of possession of marijuana.

24.  Mr. Hurd pled guilty to possession of marijuana and on September 20, 2011, was sentenced to nine (9) days of incarceration to be served on weekends.

25.  Mr. Hurd surrendered to the District of Columbia Department of Corrections on September 23, 2011, and was released on September 25, 2011, thereby serving the first weekend term.

26.  Mr. Hurd surrendered again on September 30, 2011, to serve the second weekend.

27.  On October 2, 2011, instead of releasing Mr. Hurd as the court order required, DCDC refused to release him.

28.  Without granting Mr. Hurd a hearing, DCDC kept Mr. Hurd in jail, informing him that he had 27 months remaining to be served on the 2006 sentence.

29.  Mr. Hurd moved for a writ of habeas corpus on November 16, 2011, but the Superior Court did not act on the petition.

30.  On June 5, 2012, Mr. Hurd filed a second Petition for Writ of Habeas Corpus, asking for an emergency hearing.

31.  On June 21, 2012, the Superior Court scheduled the hearing to occur on Mr. Hurd's motion for July 27, 2012, more than a month later.

32.  At the hearing on July 27, 2012, the Superior Court denied the petition for habeas corpus.

33.  Mr. Hurd then appealed to the District of Columbia Court of Appeals.  The Court of Appeals did not act on his appeal for seventeen months.

34.  Mr. Hurd was released from incarceration on or about September 30, 2013.

35.  By the time of his release, the Court of Appeals had not yet acted on his appeal.

36.  On December 18, 2013, the Court of Appeals dismissed his appeal as moot.

37.  The District of Columbia has a custom and practice of detaining prisoners for longer than their actual sentences.

38.  The actions of the District of Columbia deprived Mr. Hurd of his right to liberty without due process of law.

**COUNT ONE**
**WRONGFUL DEPRIVATION OF LIBERTY**

39.  The allegations of the foregoing paragraphs are re-alleged and incorporated herein by reference.

40.  The Fifth Amendment to the Constitution of the United States guarantees that no person shall "be deprived of life, liberty or property, without due process of law."

41.  Mr. Hurd's 2006 sentence had been served in full by July 18, 2010.

42.  Pursuant to the court's order regarding the 2011 sentence, Mr. Hurd was required to serve weekends and was  required to be released on October 2, 2011.

43.  The District of Columbia had a custom and practice of over-detention of prisoners, and pursuant to this custom and practice routinely refused to release prisoners at the time required by court order.

44.  Pursuant to that custom and practice, the District of Columbia refused to release Mr. Hurd when required.

45.  Mr. Hurd protested that his 2006 sentence had already been served in full.

46.  In direct violation of the constitutional right that no liberty could be deprived without due process of law, Mr. Hurd was entitled to a hearing before the District of Columbia could keep him in custody.

47.  In accordance with its custom and policy, the District of Columbia refused to provide a hearing.

48.  Mr. Hurd was further deprived of due process when the Superior Court did not act upon his habeas corpus petition for a period of nine months.

49.  Mr. Hurd is entitled to compensation under 42 U.S.C. § 1988 and other relevant statutes for the time he was wrongfully incarcerated.

COUNT TWO
**NEGLIGENT SUPERVISION AND TRAINING**

50.  The allegations of the foregoing paragraphs are re-alleged and incorporated herein by reference.

51.  The customs and practices of the DCDC of over detaining prisoners have been the subject of litigation since at least 2006, and have been known both the District Government and to the DCDC.

52.  In order to prevent over detention, the District of Columbia owed a duty to Mr. Hurd and other prisoners, properly to train the DCDC staff and to adopt policies and procedures designed to prevent over detention by ensuring that notations would be place in the records when sentences had been served in full.

53.  The District of Columbia breached these duties.

54.  As proximate result of the District of Columbia's negligent supervision and training, and its failure to adopt appropriate policies, the DCDC personnel were permitted to refuse to release Mr. Hurd when required.

55.  Mr. Hurd has suffered damages, including the loss of income, during the period in which he was wrongfully detained.

56.  Mr. Hurd is entitled to recover these damages from the District of Columbia.

WHEREFORE,  Mr. Hurd is entitled to the following relief:

1.  An award of damages for violation of his constitutional right to liberty;

2.  An award of damages to compensate for lost income and other damages flowing from the negligent acts of the District of Columbia.

3.  An award of attorneys' fees and the costs of this action under 42 U.S.C § 1988;

Jury trial demanded.

8

4.  Prejudgment interest on all sums awarded; and

5.  Such other and further relief as the Court may deem just and proper.

Dated:       May 1, 2015


_____/s/ C. Allen Foster_____
C. Allen Foster (DCBN 411662)
Erik D. Bolog (DCBN 433614)
Eric C. Rowe (DCBN 466182)
WHITEFORD TAYLOR & PRESTON LLP
1025 Connecticut Avenue NW
Washington, DC 20036
Phone:        (202) 659-6800
Fax:          (202) 331-0573
cafoster@wtplaw.com
ebolog@wtplaw.com
erowe@wtplaw.com


2069634