**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| MICHAEL D. HURD, JR., | |
| Plaintiff, | |
| v. | Civil Action No. 15-666 (JDB) |
| DISTRICT OF COLUMBIA, | |
| Defendant. | |

**MEMORANDUM OPINION**

In this long-running litigation, Michael D. Hurd, Jr. alleges that the District of Columbia (the "District") violated his Fifth Amendment due process rights when it reincarcerated him without a hearing in 2011 for unserved misdemeanor sentences. On July 25, 2023, the Court granted the District's renewed motion for summary judgment as to Hurd's substantive due process claim but denied it as to Hurd's procedural due process claim. See Hurd v. District of Columbia, Civ. A. No. 15-666 (JDB), 2023 WL 4744056, at *20 (D.D.C. July 25, 2023) [ECF No. 76] ("SJ Op."). The District now moves for partial reconsideration of that decision under Federal Rule of Civil Procedure 54(b). The District contends that the damages theory offered by Hurd and relied on by the Court in its earlier opinion—that a pre-deprivation hearing would have revealed that Hurd was entitled to have time-served credit applied to each of his misdemeanor sentences— contradicts the established facts of the case and is wrong as a matter of law.

For the reasons that follow, the Court concludes that reconsideration is warranted, that Hurd cannot rely on a time-served credit theory of damages, and that Hurd's alternative damages theories are also flawed. The Court will thus grant the District's motion for reconsideration and grant summary judgment in the District's favor on all claims.

1

## Background

The Court assumes familiarity with the factual and procedural history set forth in its prior opinion, see SJ Op. at *1–5, and so will recount the facts and procedural history only briefly with an emphasis on information relevant to the instant motion.[1]

### I.   Factual Background

On September 21, 2006, Judge Holeman of the D.C. Superior Court sentenced Hurd (following revocation of probation) on five counts: carrying a pistol without a license (Count Two), possession of a prohibited weapon (Count Three), two counts of possession of an unregistered firearm (Counts Four and Five), and possession of cocaine (Count Six). See SJ Op. at *1–2; Ex. 3 to Def.'s Renewed Mot. for Summ. J. ("Mot. for Summ. J.") [ECF No. 65-5] ("Dist. Ex. 3") (criminal judgment dated September 21, 2006). Count Two was a felony; the other four counts were misdemeanors. See SJ Op. at *1–2. Judge Holeman imposed a sentence of 42 months' imprisonment: 15 months on Count Two (followed by 3 years of supervised release), 12 months on Count Three, and 5 months on each of Counts Four, Five, and Six, all to run consecutively. Dist. Ex. 3. The judgment listed "Credit For Time Served" next to the sentence on each count. Id. Prior to this sentencing, Hurd had spent 97 days in custody: 95 days following his arrest and 2 days on the initial, largely suspended sentence for which Hurd was on probation. See SJ Op. at *1–2.[2]

"The normal practice at the time was for felony time to be served in the federal prison and misdemeanor time to be served in the D.C. Jail." Id. at *3 (cleaned up) (internal quotation marks

---

[1] Citations to the Court's prior opinion follow the Westlaw pagination, and citations should be understood as incorporating by reference the record citations in the Court's prior opinion.

[2] Judge Holeman appears to have initially imposed a sentence of 45 months' imprisonment, with the execution largely suspended. See SJ Op. at *1 & n.4; Ex. 1 to Mot. for Summ. J. [ECF No. 65-3] (criminal judgment dated January 13, 2006). The parties seem to agree, however, that the operative sentence for present purposes is 42 months' incarceration, and the Court's prior opinion proceeded on that assumption. See SJ Op. at *1 n.4.

omitted).  Hurd served his sentence on the felony count in federal prison but was then released on

July 18, 2007, to begin his term of supervised release rather than transferred to the D.C. Jail.  Id.

at *2.  At the time of his release, he had not yet served prison time on his four misdemeanor

sentences (totaling 27 months).  Id.  Hurd's three-year term of supervised release ended on July

18, 2010.  Id. at *3.

On September 20, 2011, Hurd pleaded guilty to possession of a controlled substance in

D.C. Superior Court and was sentenced to nine days' incarceration to be served over the course of

three weekends at D.C. Jail.  Id.  On October 2, while performing a "release clearance process" at

the conclusion of Hurd's second weekend of incarceration, a D.C. Department of Corrections

("DOC") employee discovered that Hurd had never been returned to D.C. Jail to serve his previous

four misdemeanor sentences.  Id.  DOC staff thus informed Hurd that he still had 27 months to

serve on his 2006 sentences and would not be released.  Id. at *4.  DOC staff declined to give Hurd

a hearing.  Id.

On November 16, 2011, Hurd—through counsel—filed a petition for a writ of habeas

corpus in D.C. Superior Court.  See Ex. 18 to Mot. for Summ. J. [ECF No. 65-20] ("Dist. Ex. 18")

(habeas petition); SJ Op. at *4.  Judge Holeman held a hearing on Hurd's petition on July 27, 2012.

See SJ Op. at *4; Ex. 12 to Mot. for Summ. J. [ECF No. 65-14] ("Dist. Ex. 12") (hearing transcript).

At the hearing, Hurd argued, inter alia, that (1) he was entitled to credit for the time he had spent

at liberty, (2) his reincarceration violated his due process rights, and (3) the DOC lacked authority

to "impose [its own] sentence" by reincarcerating him.  See, e.g., Dist. Ex. 12 at 7–10, 40.  Judge

Holeman denied the petition for a writ of habeas corpus and remanded Hurd to serve the remainder

of his sentence, noting that "the [DOC] will be within its purview to calculate what that [remaining]

time is."  Id. at 80.  Hurd appealed.  Ex. 3 to Pl.'s Opp'n to Def.s Mot. for Summ. J. ("Opp'n to

Mot. for Summ. J.") [ECF No. 66-5] at 4 (Superior Court docket).

Hurd was released from DOC custody on September 30, 2013.  SJ Op. at *4.  On December

18, 2013, the D.C. Court of Appeals dismissed Hurd's appeal as moot given his release.  Ex. 24 to

Opp'n to Mot. for Summ. J. [ECF No. 66-26] (order).

## II.   Procedural History

Hurd sued the District in May 2015 under 42 U.S.C. § 1983, alleging that the District's

actions violated his due process rights.  SJ Op. at *5.  The case has been up to the D.C. Circuit

twice on appeal and was reassigned to this Court in February 2022 upon the prior district judge's

retirement.  See id.

The most recent round of summary judgment briefing involved whether the District

violated Hurd's procedural and substantive due process rights.[3]  The parties also devoted

significant briefing to the damages awardable for such violations.  See Mot. for Summ. J. [ECF

No. 65] at 20–21; Opp'n to Mot. for Summ. J. [ECF No. 66] at 30–36; Def.'s Reply in Supp. of

Mot. for Summ. J. [ECF No. 68] ("MSJ Reply") at 15–18; Pl.'s Proposed Surreply in Opp'n to

Mot. for Summ. J. [ECF No. 77] ("Pl.'s Surreply") at 1–7; Def.'s Opp'n to Mot. for Sur-Reply

[ECF No. 74] ("Def.'s Resp. to Surreply") at 1–8.

Hurd contended, as relevant here, that the District violated his right to procedural due

process and that "[w]ith th[at] . . . violation having been shown, the District is responsible for the

resulting damages 'unless [it] shows they would have occurred regardless.'"  Opp'n to Mot. for

Summ. J. at 30 (quoting Thompson v. District of Columbia, 832 F.3d 339, 346 (D.C. Cir. 2016)).

---

[3] At issue in the initial summary judgment briefing was whether "even if a constitutional violation . . . occurred, Hurd [could] . . . show that the violation was caused by a policy or custom of the District" so as to establish Monell liability.  SJ Op. at *5.

That question of damages "boil[ed] down to a determination of whether there was any time left for Mr. Hurd to serve on the 2006 sentence." Id. at 31; see also id. (framing the issue as bearing on "either . . . the determination as to the damages awardable for a violation of procedural due process, or as an independent violation of substantive due process"). Hurd advanced three theories of damages, all based on alleged over-incarceration: (1) his July 2007 release was the result of a deliberate decision by the Parole Commission that ended his sentence, (2) he was entitled to credit for time served on each misdemeanor count, such that his remaining sentence was roughly 14 months rather than 27 months,[4] and (3) his sentence continued to run while on release and thus had been served in full by the time of his reincarceration. See id. at 31–36. A pre-deprivation hearing, he suggests, would have permitted him to raise these arguments and either avoid reincarceration entirely or at least receive a shorter sentence. See, e.g., id. at 31.

The District pushed back on each of these theories, arguing that Hurd had failed to advance a viable damages theory and that this failure was fatal to his procedural due process claim. MSJ Reply at 15; see id. at 15–18. As to Hurd's time-served credit theory, the District primarily responded that it should not be entertained because it was "a new claim that has not been pleaded or, at the least, a new theory that has never been pursued." Id. at 17. The parties further addressed Hurd's three theories of damages in a surreply and opposition thereto. See Pl.'s Surreply; Def.'s Resp. to Surreply.

The Court granted the District's motion for summary judgment as to Hurd's substantive due process claim but denied it as to Hurd's procedural due process claim. See SJ Op. at *20. On

---

[4] That is, 27 months less 388 days (97 days' time-served credit on each of the four misdemeanor counts). Hurd does not address the discrepancy between these figures (27 months less 14 months, for a 13-month difference) and his allegation of 10 months actually over-served. The Court will assume that the difference is due to the application of other credits (e.g., for good time).

the procedural due process claim, the Court concluded that the undisputed facts "show that Hurd had a protected liberty interest in his continued freedom" and that "the District has not met its burden of showing . . . that [it] was justified in forgoing a pre-deprivation hearing." Id. at *8, *10. The Court then accepted Hurd's time-served credit theory of damages.  It first concluded that this theory was "within the contours of [Hurd's] complaint" and that the District had not "demonstrated the requisite prejudice to foreclose consideration of it."  Id. at *12.  On the theory's merits, the Court reasoned that, despite Judge Holeman's denial of Hurd's habeas petition, "[i]t is possible that [given different circumstances] the outcome of the hearing would have been different" and that, "[h]ad [the time-served credit] argument been raised and accepted at a pre-deprivation hearing, Hurd would have spent over a year less time incarcerated than he did."  Id.  The Court noted that applying time-served credit to consecutive sentences was "illogical," but concluded that the "clear language" of the 2006 judgment mandated this result. Id. at 12 n.12.  Accordingly, the Court held that there was a genuine dispute of material fact as to the damages issue and that summary judgment for the District was not warranted. Id. at *13.  The Court did not reach Hurd's other damages theories.  See id. at *11 n.10, *13 n.13.

On October 5, 2023, the District moved for partial reconsideration of the Court's summary judgment decision.  Def.'s Mot. for Recons. [ECF No. 87] ("Mot.").  The District contends that the time-served credit theory relied on by the Court suffers from serious defects that were not thoroughly ventilated in the prior briefing because of how "new and underdeveloped" the theory was.  Id. at 1.  The District argues that the Court should reject the theory for five reasons: (1) it is contrary to the allegations in Hurd's amended complaint, (2) it runs afoul of judicial estoppel and law-of-the case principles by conflicting with this Court's (and the D.C. Circuit's) prior acceptance of Hurd's factual representations, (3) it is barred by Heck v. Humphrey, 512 U.S. 477 (1994), (4)

it is wrong as a matter of D.C. law, and (5) a potentially shorter sentence would not have impacted the District's initial decision to reincarcerate Hurd.  See id. at 9–28.  The District further contends that Hurd's alternative damages theories are also unavailing.  See id. at 28–31.

Hurd has opposed the motion.  Pl.'s Opp'n to Mot. [ECF No. 90] ("Opp'n").  He argues that the District has failed to show that reconsideration is appropriate and that, inter alia, his time-served credit theory is not foreclosed by Heck.  See id. at 3–4, 7–8.  Hurd does not meaningfully respond to the District's four other arguments as to the time-served credit theory, nor does he renew any argument on his alternative theories of damages.  See generally id. at 1–8.

The District filed a reply in support of its motion for reconsideration.  Def.'s Reply in Supp. of Mot. [ECF No. 91].  The motion is thus fully briefed and ripe for decision.

### Legal Standard

Motions for reconsideration of interlocutory orders are governed by Federal Rule of Civil Procedure 54(b).  See Cobell v. Jewell, 802 F.3d 12, 19 (D.C. Cir. 2015).  That Rule provides that "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  Fed. R. Civ. P. 54(b).

Reconsideration under Rule 54(b) is appropriate "as justice requires."  Cobell, 802 F.3d at 25 (internal quotation marks omitted); see also, e.g., Inova Health Care Servs. for Inova Fairfax Hosp. v. Omni Shoreham Corp., Civ. A. No. 20-784 (JDB), 2023 WL 5206142, at *5 (D.D.C. Aug. 14, 2023).  Under this standard, "district courts retain broad discretion to reconsider earlier orders and may elect to grant a motion for reconsideration if there are good reasons for doing so."  Inova, 2023 WL 5206142, at *5 (cleaned up) (quoting Emp. L. Grp., P.C. v. San Diego Emp. L. Grp., Civ. A. No. 20-1852 (JDB), 2021 WL 3931872, at *1 (D.D.C. Sept. 2, 2021)).  Such reasons

include "whether the court has patently misunderstood a party, has made a decision outside the adversarial issues presented to the court by the parties, has made an error not of reasoning, but of apprehension, or where a controlling or significant change in the law or facts has occurred since the submission of the issue to the court." Id. (quoting Scott v. Conley, 937 F. Supp. 2d 60, 64–65 (D.D.C. 2013)).  Reconsideration may also be warranted to "respond[] to the evolution of legal issues in the litigation." Lin v. District of Columbia, No. 20-7111, 2022 WL 4007900, at *5 (D.C. Cir. Sept. 2, 2022).  Motions for reconsideration are not, however, properly used "to reargue facts and theories upon which a court has already ruled" or to "present[] theories or arguments that could have been advanced earlier." Inova, 2023 WL 5206142, at *5 (quoting Dunlap v. Presidential Advisory Comm'n on Election Integrity, 319 F. Supp. 3d 70, 81 (D.D.C. 2018)).  The movant bears the burden of showing that reconsideration is warranted. Id.

## Analysis

At issue in this motion for reconsideration are the damages recoverable on Hurd's procedural due process claim.  Strictly speaking, damages are not an element of a procedural due process claim. See Reed v. Goertz, 143 S. Ct. 955, 961 (2023) ("A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process.").  A plaintiff may be entitled to nominal damages for a procedural due process violation even if he or she fails to establish actual damages. See, e.g., Carey v. Piphus, 435 U.S. 247, 266 (1978).  But courts have entered judgment against § 1983 plaintiffs where the plaintiff both fails to advance a viable theory of compensatory damages and forfeits a claim to nominal damages. See Davis v. District of Columbia, 158 F.3d 1342, 1349 (D.C. Cir. 1998); Matthews v. District of Columbia, 675 F. Supp. 2d 180, 188 (D.D.C. 2009).  Hence, the Court will examine both Hurd's compensatory damages theories and his argument (or

lack thereof) for nominal damages to determine whether his procedural due process claim survives summary judgment.

## I.      Time-Served Credit Theory of Compensatory Damages

The District advances five independent arguments as to why Hurd cannot pursue damages on the time-served credit theory of over-incarceration previously accepted by the Court.  See Mot. at 9–28.  The Court concludes that at least three of these arguments have merit and require the Court to reconsider its decision and to reject Hurd's theory.

### A.  Impact on Decision to Reincarcerate

The District contends that, even accepting that Hurd was entitled to time-served credit on each misdemeanor count, this theory cannot support damages because the consequent over-incarceration did not "result[] from the lack of process surrounding [the District's] initial decision to reincarcerate him."  Mot. at 25; see id. at 25–28.

The Court agrees.  It is undisputed that, even if Hurd was entitled to time-served credit on each count (and assuming that his sentence was not otherwise fulfilled), he still had a roughly 14-month sentence to serve at the time of his reincarceration.  See, e.g., Opp'n to Mot. for Summ. J. at 32–33.  He would have been reincarcerated regardless of whether the adjudicator at a pre-deprivation hearing concluded that his remaining sentence was 14 months or was instead 27 months.  And Hurd received a hearing 10 months later—well after his reincarceration, but still well before the conclusion of this shorter 14-month sentence.  The over-incarceration of which Hurd complains thus occurred after he received process.  Hence, it is not clear to the Court how this harm could be the product of the alleged due process violation.  Rather, Hurd's time-served credit challenge attacks the nature of Judge Holeman's original sentence independent of the issues presented by Hurd's release and reincarceration.

Hurd's argument seems to be that had he been given a pre-deprivation hearing, he might have raised this theory and the court might have ruled in his favor and clarified his sentence length. But this argument is not responsive to the point that Hurd received process prior to the alleged harm—the incarceration beyond 14 months. It is also belied by the record. Hurd did not raise this challenge at his habeas hearing. See generally Dist. Ex. 12. Nor is there any indication that he raised it in a subsequent prison grievance process. See Ex. 16 to Mot. for Summ. J. [ECF No. 65-18] ("Dist. Ex. 16") (interrogatory responses) at 18 (answering "none" to request to identify "all administrative remedy procedure requests you have filed"). Indeed, Hurd does not appear to have made any reference (let alone argument) as to the impact of time-served credit on his sentence until the second appeal in this litigation—almost eight years after the fact. See Pl.'s Surreply at 4 n.1; Ex. 1 to Pl.'s Surreply [ECF No. 77-1] (appellate briefing) at 5 n.3. There is no reason to believe that he would have done so at a pre-deprivation hearing either.

Moreover, the Court is wary of accepting Hurd's speculation that a hypothetical different hearing might have led to a different result. See, e.g., Opp'n at 6 (noting that "[j]udges and lawyers make mistakes"—the implication being that the judge at a hypothetical pre-deprivation hearing might have credited Hurd's arguments even if they were legally incorrect). To the extent the Court's prior opinion can be read as engaging in such speculation, the Court now rejects that line of reasoning. As the District argues, "[s]peculating about a different setting, judge, counsel, or burden is not an evidence-grounded exercise" and such speculation would permit plaintiffs to always argue that the outcome might have been different. Mot. at 27–28. As discussed further below, the Court concludes that the proper approach to assessing the outcome of a hypothetical pre-deprivation hearing is either to look to the result of the eventual hearing (if one is held), see,

e.g., Brown v. Daniels, 290 F. App'x 467, 473 (3d Cir. 2008) (per curiam), or to assess in the first instance the correct result, see, e.g., Carey, 435 U.S. at 267.

### B. Heck v. Humphrey

The District further argues that Hurd's time-served credit theory of over-incarceration is barred by Heck v. Humphrey, 512 U.S. 477 (1994). See Mot. at 15–16; Reply at 4–6. Heck involved the relationship between 42 U.S.C. § 1983 and the federal habeas corpus statute—that is, "whether a state prisoner may challenge the constitutionality of his conviction in a [§ 1983] suit for damages." Heck, 512 U.S. at 478. Drawing an analogy to the tort of malicious prosecution, the Supreme Court held that, in order to maintain a § 1983 suit, a plaintiff must demonstrate that the underlying criminal proceeding was terminated in his favor:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence . . . .

Id. at 486–87 (footnote and citation omitted); see id. at 484–87. If so, then the plaintiff cannot recover damages. Id. at 486–87.

The Court concludes that Hurd's time-served credit theory of over-incarceration "necessarily impl[ies]" the invalidity of his confinement. Hurd expressly argues that the District unlawfully imprisoned him for roughly 10 months longer than it should have. Opp'n to Mot. for Summ. J. at 32–33; see also Hoog-Watson v. Guadalupe Cnty., Tex., 591 F.3d 431, 435 (5th Cir. 2009) (discussing situation where Heck bar is triggered by positions taken in summary judgment

briefing).  That this damages theory is advanced in the context of Hurd's procedural due process claim does not alter the <u>Heck</u> analysis.  <u>See</u> <u>Edwards v. Balisok</u>, 520 U.S. 641, 645 (1997) (rejecting argument that a procedural challenge was necessarily cognizable under § 1983, because "the <u>nature</u> of the challenge to the procedures could be such as necessarily to imply the invalidity of the judgment" (emphasis added)).

Hurd's sole response is that he is not challenging Judge Holeman's sentence, but rather seeking to "validate" it by advancing the correct interpretation of the sentence's length.  Opp'n at 7–8.  This misunderstands the inquiry.  <u>Heck</u>'s bar applies not just to challenges to an initial conviction or sentence as rendered, but also to "allegedly unconstitutional . . . imprisonment." <u>Heck</u>, 512 U.S. at 486; <u>see</u> <u>id.</u> (noting applicability to challenges to "conviction or confinement"); <u>see also, e.g.</u>, <u>Edwards</u>, 520 U.S. at 643, 645–46 (applying <u>Heck</u> in context of deprivation of prisoner's good-time credits).  At heart, the Supreme Court's <u>Heck</u> jurisprudence "focuse[s] on the need to ensure that state prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement." <u>Wilkinson v. Dotson</u>, 544 U.S. 74, 81 (2005).

The more difficult question—which Hurd does not address in his briefing—is whether <u>Heck</u>'s favorable-termination requirement applies to <u>former</u> prisoners like Hurd.  In <u>Heck</u>, Justice Scalia, writing for the five-Justice majority, reasoned that the favorable-termination requirement should still apply "in those cases . . . involving former state prisoners who, because they are no longer in custody, cannot bring postconviction challenges," because "the principle barring collateral attacks . . . is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated." <u>Id.</u> at 490 n.10.  Justice Souter staked out a different position in his concurrence in the judgment.  In his view, the Court's opinion could be read to produce an "untoward result":

> If [individuals not "in custody" for habeas purposes] (people who were merely fined, for example, or who have completed short terms of imprisonment, probation, or parole, or who discover (through no fault of their own) a constitutional violation after full expiration of their sentences), like state prisoners, were required to show the prior invalidation of their convictions or sentences in order to obtain § 1983 damages for unconstitutional conviction or imprisonment, the result would be to deny any federal forum for claiming a deprivation of federal rights to those who cannot first obtain a favorable state ruling.

Id. at 500 (Souter, J., concurring in the judgment).  To avoid this result, Justice Souter would "construe § 1983 in light of the habeas statute and its explicit policy of exhaustion" rather than "cast[ing] doubt on the ability of an individual unaffected by the habeas statute to take advantage of the broad reach of § 1983."  Id. at 503.

This question arose again four years later in Spencer v. Kemna, 523 U.S. 1 (1998), a case involving whether a former prisoner's habeas petition challenging his parole revocation was mooted by the fact that he had completed his entire term of imprisonment.  See id. at 3.  The petitioner advanced a multitude of arguments as to why his petition was not moot, including that "since . . . [Heck] would foreclose him from pursuing a damages action under [§ 1983] unless he [could] establish the invalidity of his parole revocation, his action to establish that invalidity [could not] be moot."  Id. at 17.  Justice Scalia, writing for the eight-Justice majority, rejected that argument as "a great non sequitur" because it rested on the false premise that "a § 1983 action for damages must always and everywhere be available."  Id.

Justice Souter joined the majority opinion but also penned a separate concurrence.  He explained that the reasoning from his Heck concurrence provided "an added reason" for finding the case moot: because, properly read, Heck's favorable-termination requirement did not apply to the petitioner (a former prisoner), the petitioner's Heck-based argument against mootness failed.  Id. at 18 (Souter, J., concurring); see id. at 18–21.  Justices O'Connor, Ginsburg, and Breyer joined Justice Souter's concurrence.  Id. at 18.  And Justice Stevens, the lone dissenter, noted in a footnote

that "[g]iven the Court's holding that petitioner does not have a remedy under the habeas statute, it is perfectly clear, as Justice Souter explains, that he may bring an action under 42 U.S.C. § 1983." Id. at 25 n.8 (Stevens, J., dissenting).  Thus, five Justices, albeit in dicta across multiple opinions, endorsed the view that Heck's favorable-termination requirement generally does not apply to former prisoners.

The Supreme Court has yet to clarify the state of its former-prisoner favorable-termination jurisprudence in the wake of Heck and Spencer.  See, e.g., Muhammad v. Close, 540 U.S. 749, 752 n.2 (2004) ("Members of the Court have expressed the view that unavailability of habeas for other reasons may also dispense with the Heck requirement.  This case is no occasion to settle the issue." (citations omitted)).  And the circuits are divided on this question.

The First, Third, Fifth, Seventh, and Eighth Circuits have concluded that Heck's general rule establishing the favorable-termination requirement—including as applied to former prisoners—continues to govern.  These circuits generally reason that the pronouncements in the Spencer concurrences and dissent do not override the Heck majority's statement on this point and that they will leave to the Supreme Court the prerogative of revisiting the issue.  See Figueroa v. Rivera, 147 F.3d 77, 81 n.3 (1st Cir. 1998); Gilles v. Davis, 427 F.3d 197, 209–10 (3d Cir. 2005); Randell v. Johnson, 227 F.3d 300, 301 (5th Cir. 2000) (per curiam); Savory v. Cannon, 947 F.3d 409, 421–22, 428 (7th Cir. 2020) (en banc); Entzi v. Redmann, 485 F.3d 998, 1003 (8th Cir. 2007).

The Second, Fourth, Sixth, Ninth, Tenth, and Eleventh Circuits have drawn on Spencer to recognize a potential exception to the favorable-termination requirement for individuals no longer in custody.  But most of these circuits limit this exception to instances where the former prisoner "lacked access to federal habeas corpus while in custody" due to the shortness of the sentence or otherwise, Griffin v. Balt. Police Dep't, 804 F.3d 692, 697 (4th Cir. 2015); see also Powers v.

Hamilton Cnty. Pub. Def. Comm'n, 501 F.3d 592, 601–03 (6th Cir. 2007), or—if the prisoner had access—diligently pursued his or her grievances through the habeas process, see Galanti v. Nev. Dep't of Corr., 65 F.4th 1152, 1155–56 (9th Cir. 2023); Cohen v. Longshore, 621 F.3d 1311, 1317 (10th Cir. 2010); Reilly v. Herrera, 622 F. App'x 832, 834 (11th Cir. 2015) (per curiam).[5]

The D.C. Circuit has yet to decide this question.  It has, however, repeatedly applied Heck's favorable-termination requirement to former prisoners in unpublished orders.  See, e.g., Brown v. U.S. Supreme Ct., No. 22-5261, 2023 WL 3563075, at *1 (D.C. Cir. May 19, 2023) (per curiam); Johnson v. Fenty, No. 10-5105, 2010 WL 4340344, at *1 (D.C. Cir. Oct. 1, 2010) (per curiam). The two courts in this District to have directly considered the question also applied the favorable-termination requirement to former prisoners.  See Judd v. U.S. Dep't of Just., Civ. A. No. 19-02620 (TNM), 2020 WL 1905149, at *2 (D.D.C. Apr. 17, 2020); Molina-Aviles v. District of Columbia, 797 F. Supp. 2d 1, 5 n.5 (D.D.C. 2011).

Ultimately, the Court need not take a position on this circuit split because it concludes that Hurd's time-served credit theory is barred under either approach.  The underlying criminal proceeding has not been terminated in Hurd's favor and his sentence has not been set aside.  And although Hurd is no longer in custody, he never raised any challenge to the computation of his sentence length while in custody, let alone diligently contested this computation via a federal habeas petition.  See generally Dist. Ex. 12; see also Dist. Ex. 16 at 18.  As such, Heck bars him from now relying on this theory in support of his § 1983 claim.

---

[5] Early Second Circuit cases recognized a potential exception to Heck but were fairly fact-specific.  See Jenkins v. Haubert, 179 F.3d 19, 27 (2d Cir. 1999); Leather v. Eyck, 180 F.3d 420, 424 (2d Cir. 1999).  In Poventud v. City of New York, 715 F.3d 57 (2d Cir. 2013), a divided panel held that the Heck favorable-termination requirement does not apply to former prisoners.  See id. at 61–62.  The Second Circuit vacated the panel opinion and granted rehearing en banc to consider the scope of the Heck bar, but ultimately decided the case "on the narrowest possible grounds."  Poventud v. City of New York, 750 F.3d 121, 127 & n.7 (2d Cir. 2014) (en banc).  The Second Circuit does not appear to have subsequently addressed the question.

### C.  D.C. Law

The District also maintains that Hurd's time-served credit theory fails because it is contrary to District of Columbia law regarding the application of such credits to a sentence.  See Mot. at 17–24.  Again, the Court agrees.  The relevant D.C. Code provision is § 24–221.03(a).  See, e.g., Shelton v. United States, 721 A.2d 603, 605 (D.C. 1998); Banks v. Marberry, Civ. A. No. 07-51, 2008 WL 1881802, at *2–3 (W.D. Pa. Apr. 24, 2008).  That provision states:

> Every person shall be given credit on the maximum and the minimum term of imprisonment for time spent in custody, or on parole in accordance with § 24-406, as a result of the offense for which the sentence was imposed.  When entering the final order in any case, the court shall provide that the person be given credit for the time spent in custody, or on parole in accordance with § 24-406, as a result of the offense for which sentence was imposed.

D.C. Code § 24–221.03(a).  The D.C. courts do not appear to have interpreted this provision as applied to the question at issue here, so the Court will "attempt to predict the applicable state law." Whiteru v. Wash. Metro. Area Transit Auth., 636 F. Supp. 3d 107, 111 (D.D.C. 2022) (internal quotation marks omitted).

Beginning with the text, the use of the phrase "term of imprisonment" strongly suggests that credit should be applied once against the aggregate period of incarceration.  It would be odd to refer to consecutive sentences as individual "terms of imprisonment."  That said, the provision does not speak directly to the treatment of consecutive sentences and the references to "the offense" (singular) can be read to suggest a focus on the sentence associated with an individual count.

However, the reading of the text that applies credit once draws further support from various sources.  To begin, another provision in the same section of the Code speaks of the application of credit to a full "term of confinement."  See id. § 24–221.03(c) ("Any person who is sentenced to a term of confinement in a correctional facility or hospital shall have deducted from the term all time

actually spent, pursuant to a court order, by the person in a hospital for examination purposes or treatment prior to trial or pending an appeal.").[6]

Moreover, courts that have considered similar statutes have overwhelmingly—perhaps universally—concluded that time-served credit must be applied once to a defendant's aggregate sentence rather than to each consecutive sentence.  See State v. Price, 50 P.3d 530, 535 (Mont. 2002) (noting that this approach is "uniformly followed" and collecting cases from 27 other jurisdictions); see also, e.g., State v. Vaden, 526 P.3d 620, 625 (Haw. 2023).  It is fair to assume that D.C. would follow this majority approach.  See Bobo v. Tenn. Valley Auth., 855 F.3d 1294, 1304 (11th Cir. 2017) ("[W]e generally presume that [state] courts would adopt the majority view on a legal issue in the absence of indications to the contrary.").

Statutory purpose and policy considerations also favor reading the statute in this manner. See Eaglin v. District of Columbia, 123 A.3d 953, 957 (D.C. 2015) (noting that D.C. courts construe statutes "in a manner which assumes that the legislature acted logically and rationally, and avoid interpretations of statutes which lead to implausible results" (cleaned up)).  As the District argues, construing the statute to apply time-served credit to multiple counts could lead to significant sentence variances based on the amount of time a defendant served in pre-trial detention and the number of counts—because "the effect of a day in jail is multiplied," Hurd "would get a five-for-one deal" given his five consecutive sentences.  Mot. at 20.  This construction would redound to the benefit of defendants who committed multiple crimes, and would also create a

---

[6] The District argues that the Good Time Credits Act as initially enacted provided that good-time credits be applied to an aggregate sentence rather than consecutive sentences. Mot. at 20.  This argument is misplaced for several reasons.  The provision cited by the District has been repealed, so its relevance here is marginal at best.  Moreover, the directive that credits be applied to an aggregate sentence in the good-time context could arguably support the inference that the omission in the time-served context was intentional.  Cf. Salinas v. U.S. R.R. Ret. Bd., 141 S. Ct. 691, 698 (2021) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quoting Russello v. United States, 464 U.S. 16, 23 (1983))).

disparity between defendants sentenced to consecutive sentences and those sentenced to concurrent sentences (who would only receive a one-for-one credit for time served).  See id. at 20–22.  This construction would also lead to differential treatment of indigent defendants who remain incarcerated prior to trial (and gain access to the time-served multiplier) versus non-indigent defendants who can afford to post bail—an outcome in tension with the general goal of time-served statutes to standardize the treatment of both types of defendants.  See id. at 21 (citing Nissel v. Pearce, 764 P.2d 224, 225–26 (Or. 1988)).  In short, as the Court noted in its earlier opinion, applying time-served credit to each count would be "illogical."  SJ Op. at *12.

To top it off, the D.C. Department of Corrections administers credits and applies them to a defendant's sentence.  See Dist. Ex. 12 at 54, 80; cf. United States v. Dennis, Crim. A. No. 11-362 (BAH), 2020 WL 5107544, at *1 (D.D.C. Aug. 31, 2020).  The DOC interprets § 24–221.03(a) to provide for a one-time application of time-served credit, not for double-counting against multiple sentences.  See Ex. A to Mot. [ECF No 87-1] at 1–2 (DOC declaration); Ex. B to Mot. [ECF No. 87-2] (DOC Program Manual) at 21–23.[7]  And multiple courts have relied on this DOC policy to reject the contention that defendants are entitled to the application of time-served credit against consecutive sentences.  See, e.g., Gorbey v. Taylor, Civ. A. No. 115-644, 2015 WL 6699899, at *2 (N.D. Ala. Oct. 15, 2015), report and recommendation adopted, 2015 WL 6689125 (N.D. Ala. Nov. 3, 2015); Banks, 2008 WL 1881802, at *2–3.

The Court does not credit Hurd's argument that, irrespective of D.C. law, DOC was bound to comply with the "crystal clear" terms of the judgment and award Hurd credit against each of his misdemeanor sentences.  Opp'n at 5.  Even accepting the premise that Hurd could recover damages

---

[7] The Court will exercise its discretion to consider these materials.  See Fleck v. Dep't of Veterans Affs. Off. of Inspector Gen., 651 F. Supp. 3d 46, 51–52 (D.D.C. 2023).

based on an illegal sentence, the Court now concludes that the judgment was at least ambiguous. And viewed in light of D.C. law and DOC policy, the best reading of the judgment is that time served should be credited against consecutive sentences only insofar as it has not been fully credited against a prior sentence.

In sum, the Court concludes that Hurd's time-served credit theory is contrary to D.C. law and that, had this argument been presented at a hearing, it would have been rejected.[8]

\*          \*          \*

For each of these three reasons, the Court concludes that Hurd's time-served credit theory of damages is unavailing.  Reconsideration on this basis is warranted.  True, the District could and should have advanced more of its substantive arguments against this theory in its initial summary judgment briefing.  See Opp'n at 3–4.  But it is also true that this theory was "new and underdeveloped" at the summary judgment stage.  Mot. at 1; see Opp'n to Mot. for Summ. J. at 32–33 (devoting only four sentences to this argument).  Without the benefit of developed briefing on this question, the Court misapprehended some issues, including whether the 2006 judgment necessarily mandated the application of time-served credit to each count and the mode of analysis with respect to a hypothetical pre-deprivation hearing.  With the benefit of further briefing from both parties, the Court now concludes that this theory cannot support damages.  Hence, the Court

---

[8] The District's remaining arguments are less persuasive.  The District makes much of the fact that Hurd's amended complaint alleges that his sentence was for 42 months' incarceration, arguing that this is a judicial admission that forecloses Hurd from claiming an entitlement to time-served credits.  See Mot. at 9 (citing Am. Compl. [ECF No. 7] ¶¶ 12–13); see id. at 9–12.  But one of the paragraphs on which the District relies suggests that the 42-month figure does not include the application of various credits.  See Am. Compl. ¶ 13.  The District also contends that Hurd's time-served credits theory is foreclosed by judicial estoppel and law-of-the-case principles because this Court and the D.C. Circuit recited Hurd's sentence length as 42 months.  See Mot. at 12–14.  But it is not clear that Hurd's time-served credit challenge is "clearly inconsistent with [his] earlier position" as to the length of his sentence, nor is it clear that a court's mere recitation of a background fact amounts to "acceptance" of a party's position.  New Hampshire v. Maine, 532 U.S. 742, 750 (2001) (internal quotation marks omitted).

will exercise its "broad discretion" to reconsider its earlier conclusion and now reject Hurd's time-served credit theory of damages.  <u>Inova</u>, 2023 WL 5206142, at *5.

## II.  Alternative Compensatory Damages Theories

Having reconsidered and rejected the damages theory credited in its earlier opinion, the Court must now address the two damages theories it previously declined to reach: that Hurd's sentence had been served in full at the time of his reincarceration—and thus he is entitled to compensatory damages for over-incarceration—either because (1) his July 2007 release was the result of a deliberate decision by the Parole Commission that ended his sentence or (2) his sentence continued to run while on release and had been fully served.  <u>See</u> Opp'n to Mot. for Summ. J. at 31–36.

These two alternative theories may very well be barred by <u>Heck</u>.  <u>See</u> Mot. at 29.  But Hurd is no longer in custody and pursued these theories in his state-court habeas proceedings, so resolution of this question would require taking a position on the circuit split as to the applicability of <u>Heck</u>'s favorable-termination requirement to former prisoners.  The Court declines to reach and resolve this question and will reject Hurd's alternative damages theories on other grounds.

### A.  Parole Commission Decision

Hurd contends that "[t]he Parole Commission had full authority . . . to release [him] prior to the expiration of his full sentence" and that, if the Commission released him "as a result of a deliberate decision . . . , then [he] would have no time left to serve at all" at the time he was reincarcerated.  Opp'n to Mot. for Summ. J. at 31–32.  But "[t]he Sentencing Reform Amendment Act of 2000 abolished parole for all District of Columbia offenses committed on or after August 5, 2000, and replaced the former indeterminate sentencing regime . . . with determinate sentencing, under which the defendant receives a definite term of imprisonment followed by a specified period

of supervised release." Williams v. United States, 205 A.3d 837, 847 n.49 (D.C. 2019); see D.C.

Code § 24–403.02.  Hurd's sentence was based on offenses committed in 2005.  See Dist. Ex. 3.

Hence, his sentence was for a determinate term and the Parole Commission "ha[d] no jurisdiction

to release [him]" before he served this term of imprisonment.  King v. Miner, Civ. A. No. 11-2011,

2011 WL 3664426, at *2 n.1 (E.D.N.C. Aug. 19, 2011).  Hurd points to no legal authority that

supports his contention to the contrary.  See Opp'n to Mot. for Summ. J. at 31–32.

### B.  Credit for Time at Liberty

Hurd also asserts that "he was entitled to credit for the time he spent at liberty" and that,

because "the time at liberty exceeded the time remaining on his sentence," his sentence had been

served in full at the time of his reincarceration.  Opp'n to Mot. for Summ. J. at 33.  This argument

was squarely presented at Hurd's habeas hearing, discussed at length, and ultimately rejected by

Judge Holeman.  See, e.g., Dist. Ex. 12 at 7–8, 33, 80.

Hurd appears to assume that this is a valid theory of procedural due process damages

because, had he been granted a pre-deprivation hearing, he would have presented this argument

against reincarceration and it would have been accepted.  But when Hurd did present this theory

at his eventual hearing 10 months later, the court rejected it.  Hurd's request for compensatory

damages thus effectively asks this Court to sit in judgment of the state court's decision.  In similar

situations, courts have looked to the result of the eventual hearing to determine the result of a

hypothetical pre-deprivation hearing.  See, e.g., Brown, 290 F. App'x at 473; Lossman v. Pekarske,

707 F.2d 288, 291 (7th Cir. 1983); Ezagui v. City of New York, Civ. A. No. 09-5628 (PGG), 2012

WL 13210076, at *4 (S.D.N.Y. July 24, 2012); Williams v. New York City, Civ. A. No. 03-3543

(NRB), 2005 WL 1084585, at *9 (S.D.N.Y. May 2, 2005).  Here, Judge Holeman squarely rejected

Hurd's argument that he was entitled to credit for his time at liberty at the eventual habeas hearing,

and "there is no reason to believe that a timely hearing would have [changed this result]." Ezagui, 2012 WL 13210076, at *4.  Thus, Hurd's claim to compensatory damages on this basis cannot stand.

Even if this Court were to assess Hurd's theory on the merits, it would reach the same conclusion.  The relevant D.C. case is Wells v. United States, 802 A.2d 352 (D.C. 2002), which involved a habeas petitioner who claimed that he was entitled to credit against his sentence for time spent on release.[9]  In affirming the denial of the habeas petition, the D.C. Court of Appeals "reject[ed] any broad doctrine of credit for time at liberty."  Id. at 354 (internal quotation marks omitted).  It emphasized "the general rule that an 'offender's expectation and reliance interests in sentence mistake cases are ordinarily trumped by the strong public interest in crime prevention and punishing criminals,'" id. (quoting Davis v. Moore, 772 A.2d 204, 220 (D.C. 2001) (en banc)), and "the principle that '[a] convicted person will not be excused from serving his sentence merely because someone in a ministerial capacity makes a mistake with respect to its execution,'" id. at 354–55 (alteration in original) (quoting Davis, 772 A.2d at 219).

The Wells court left open the possibility that a prisoner might be entitled to credit for time at liberty when to deny him such credit would violate the "fundamental notions of fairness embodied in the Due Process Clause."  Id. at 355 (quoting Davis, 772 A.2d at 220); see also id. ("[O]nly the most egregious case . . . w[ill] support a substantive due process claim." (quoting Davis, 772 A.2d at 220)).  But this Court has already concluded that Hurd's reincarceration or overincarceration "after several years at liberty" did not amount to a substantive due process

---

[9] The Court has considered Hurd's various arguments as to why Wells is inapposite, Pl.'s Surreply at 1–4, and finds them unpersuasive.  Hurd attempts to distinguish Wells but does not offer any D.C. authority that he believes should govern in the alternative.  See id.; Opp'n to Mot. for Summ. J. at 33–35.  Moreover, at his habeas hearing, Hurd argued that "the standard . . . for determining whether [a] defendant is entitled to receive credit for time that he spent while erroneously released . . . was adopted by the District of Columbia Court of Appeals in Wells."  Dist. Ex. 12 at 10.

violation.  SJ Op. at *17; see id. at *17–20.[10]  Hence, because Hurd's reincarceration under these circumstances did not violate substantive due process, he is not entitled to time-at-liberty credit under Wells.[11]

## III.   Nominal Damages

The question remains whether Hurd's procedural due process claim survives summary judgment on a nominal damages theory despite his failure to advance a viable compensatory damages theory.  As noted previously, a plaintiff may be entitled to nominal damages for a procedural due process violation even if he or she fails to establish actual damages.  See, e.g., Carey, 435 U.S. at 266.  But the D.C. Circuit has concluded that a plaintiff can forfeit a claim for nominal damages, even in constitutional cases.  See Davis, 158 F.3d at 1345, 1349; People for Ethical Treatment of Animals, Inc. v. Gittens, 396 F.3d 416, 421 (D.C. Cir. 2005); see also, e.g., Alpha Painting & Constr. Co., Inc. v. Del. River Port Auth. of Pennsylvania New Jersey, 822 F. App'x 61, 69 (3d Cir. 2020); Berene v. Nationstar Mortg., LLC, 800 F. App'x 756, 761 n.5 (11th Cir. 2020) (per curiam).  Here, Hurd did not explicitly seek nominal damages in his amended complaint, see Am. Compl. [ECF No. 7] at 11–12, nor has he advanced any argument for nominal

---

[10] Having anchored any entitlement to credit for time at liberty to a substantive due process violation, the Wells court proceeded to apply the test set forth in United States v. Merritt, 478 F. Supp. 804 (D.D.C. 1979), to determine whether such a violation occurred.  See 802 A.2d at 355.  This Court previously concluded that the correct standard under which to assess a substantive due process violation in these circumstances is not Merritt but rather the Supreme Court's decision in County of Sacramento v. Lewis, 523 U.S. 833 (1998).  See SJ Op. at *13–15.  Given this constitutional holding, the Court sees no reason to rehash its prior substantive due process analysis under the Merritt framework employed by Wells.  See, e.g., Afanasieva v. Wash. Metro. Area Transit Auth., 588 F. Supp. 3d 99, 108 (D.D.C. 2022) ("[F]ederal courts do not defer to state court interpretations of federal law.").

[11] Hurd seeks damages based on these three theories of compensatory damages related to over-incarceration.  See Opp'n to Mot. for Summ. J. at 31 (noting that the "damages awardable for a violation of procedural due process" "boils down to" this question).  He has not developed any other theories of compensatory damages in relation to his procedural due process claim.  He makes passing reference to the denial of a pre-deprivation hearing preventing him from getting his affairs in order prior to being reincarcerated, see id. at 29–30, and to the fact that emotional distress caused by a due process violation itself may be recoverable, id. at 30 n.21.  But he has developed no argument on these points, and they also lack any support in the record.  See, e.g., Dist. Ex. 16 at 14–15.

damages in his briefing (despite devoting significant briefing to other damages issues).  Any claim

to nominal damages is thus forfeited.[12]

*          *          *

Because Hurd has failed to advance a viable compensatory damages theory as to his

procedural due process claim and has forfeited any claim to nominal damages, the Court concludes

that summary judgment in the District's favor on the procedural due process claim is warranted.

See Davis, 158 F.3d at 1349; Matthews, 675 F. Supp. 2d at 188.

## IV.    Conclusion

For the foregoing reasons, the Court will grant the District's motion for reconsideration

and grant summary judgment in the District's favor on all claims.  An accompanying Order will

issue on this date.

/s/
_____

JOHN D. BATES
United States District Judge

Dated: <u>December 15, 2023</u>

---

[12] <u>Aref v. Lynch</u>, 833 F.3d 242 (D.C. Cir. 2016), does not alter this conclusion.  The <u>Aref</u> court distinguished <u>Davis</u>'s forfeiture holding because the <u>Aref</u> plaintiffs made a "specific request for nominal damages in their opposition to the government's motion to dismiss" and the <u>Aref</u> complaint contained a "catch-all prayer for relief."  <u>Id.</u> at 266–67.  But while Hurd's amended complaint contains a catch-all prayer for relief, <u>see</u> Am. Compl. at 12, he never made a "specific request" for nominal damages in his briefing.  In any event, the <u>Aref</u> discussion is dictum because the court actually decided that case based on qualified immunity.  <u>See id.</u> at 267–69.